*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY SHAWN BLAMER,

Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 345907
Muskegon Circuit Court
LC No. 17-004908-FC

Before: MARKEY, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Following a bench trial, the trial court convicted defendant of second-degree murder, MCL 750.317, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a second-offense habitual offender, MCL 769.10, to 3 to 7½ years' imprisonment for the CCW conviction, 2 years' imprisonment for the felony-firearm conviction, and 40 to 60 years' imprisonment for the murder conviction. Defendant appeals by right, arguing that the sentence imposed for second-degree murder was unreasonable and disproportionate and that the trial court erred by assessing 10 points for Offense Variable (OV) 19. For the reasons set forth below, we affirm.

This case arises out of the killing of D'Anthony Keenan in August 2017. Defendant met with Keenan in a carwash bay to discuss defendant's faulty installation of a car audio system for Keenan. While the two men were at the carwash, defendant shot and killed Keenan. Defendant later dismembered Keenan's body, removing his head and hands and dumping the body parts in a national forest area. When defendant was apprehended by the police, he provided numerous, ever-evolving, and wildly-inconsistent accounts with respect to Keenan's death and the dismemberment of Keenan's body.

Defendant first argues that the trial court erred by assessing 10 points for OV 19, MCL 777.49, based on interference or attempted interference with the administration of justice, which error altered the minimum sentence guidelines range. Defendant maintains that any inconsistent statements he gave to the police and the dismemberment of Keenan's body did not interfere with the administration of justice; therefore, OV 19 should have been assessed zero points.

-1-

Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). Clear error is present when the appellate court is left with a firm and definite conviction that an error occurred. *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012). This Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy*, 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. In scoring OVs, a court may consider all record evidence, including the contents of a presentence investigation report, plea admissions, and testimony presented at a preliminary examination. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

Ten points must be assessed for OV 19 when "[t]he offender . . . interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). OV 19 provides for the consideration of conduct following the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010). For purposes of OV 19, the police are an integral component in the administration of justice. *Id.* at 201-202.

Here, defendant interfered with the administration of justice by giving a variety of different and conflicting versions of the offense to law enforcement and by burning, dismembering, and disposing of evidence related to the crime.

Defendant initially told police that he did not have a weapon in his possession, that the gun that went off killing Keenan belonged to Keenan, that the shooting was accidental after a struggle over the gun that was first wielded by Keenan, and that defendant dismembered the body to protect his family from retaliation. Defendant asserted, at least three times, that he acted alone, that he was unarmed, and that he did not take any money from Keenan. Defendant went as far as to swear on the lives of his family members that he was giving an accurate description of what had transpired. In subsequent police interviews, however, defendant admitted that he did bring a gun with him to the carwash and that this was the gun that killed Keenan. Additionally, defendant claimed that the reason he previously gave false statements to police was because two unknown masked individuals were involved in the crime. Defendant contended that after the shooting, these masked men ordered defendant to go into various stores and purchase items, including a chainsaw, garbage bags, and some cleaning solutions. Then, according to defendant, the two masked individuals entered Keenan's car with defendant and directed defendant to drive to the national forest where the masked individuals dismembered Keenan's body. The inconsistency in the statements established that some of them had necessarily been false, thereby reflecting an attempt to interfere with the administration of justice. These different and competing renditions related over several days were far more egregious and misleading than in *People v Barbee*, 470 Mich 283; 681 NW2d 348 (2004), where our Supreme Court held that simply providing police with a false name during a traffic stop constituted interference with the administration of justice.

Additionally, defendant admitted to detectives that he had removed Keenan's head and hands. Defendant also informed the police that he burned a great deal of evidence in a fire, such as sections of the carpet and seat from the vehicle where the killing occurred because they had so

much blood on them. When questioned about the location of the chainsaw used to dismember the victim, defendant informed police that he had thrown the chainsaw into a swamp. Defendant further explained that he threw the murder weapon out the window when driving away from the carwash.

Defendant's conduct reflected "a multifaceted attempt to . . . mislead the police." *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010) (reasoning that hiding or disposing of evidence may constitute interference with the administration of justice). Defendant's "actions ultimately constituted fabrications that were self-serving attempts at deception obviously aimed at leading police investigators astray or even diverting suspicion onto others and away from him." *Id.*; see also *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016) (investigating crime is critical to the administration of justice and impeding that process by attempting to avoid being caught and held accountable justifies a 10-point score for OV 19). Accordingly, the trial court did not err by assessing 10 points for OV 19.

Next, defendant contends that his sentence for second-degree murder was not proportionate or reasonable given the circumstances surrounding the offense and his status as the offender. Defendant complains that the sentence amounts to a life sentence, which is exactly what the trial court intended, despite the fact that the court did not find him guilty of first-degree murder.

It is undisputed that defendant's 40-year minimum sentence for murder fell within the guidelines range of 270 to 562 months. This Court's review of a guidelines sentence is restricted by MCL 769.34(10), which provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." As this Court observed in *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), the decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), "did not alter or diminish MCL 769.34(10)." Therefore, "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196. As discussed above, there was no scoring error and defendant does not allege that he was sentenced on the basis of inaccurate information. Accordingly, his sentence would not ordinarily be subject to appellate review.

We do note, however, that MCL 769.34(10) cannot insulate the state from appellate review of a claim that a sentence is unconstitutional, e.g., an argument that a sentence constitutes cruel or unusual punishment. See *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (MCL 769.34[10]'s limitation on review does not apply to claims of constitutional error); see also *People v Conley*, 270 Mich App 301, 316; 715 NW2d 377 (2006) ("It is axiomatic that a statutory provision, such as MCL 769.34[10], cannot authorize action in violation of the federal or state constitutions.").

To the extent that defendant is arguing that his sentence is not proportionate for purposes of cruel-or-unusual-punishment analysis, we note that a sentence falling within the guidelines is presumptively proportionate, "and a sentence that is proportionate is not cruel or unusual punishment." *Powell*, 278 Mich App at 323. A defendant can only overcome the presumption by presenting evidence of unusual circumstances that would render a presumptively proportionate

sentence disproportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). And "unusual circumstances" simply do not exist in the instant case. See *People v Davis*, 250 Mich App 357, 369-370; 649 NW2d 94 (2002) (strong family background, prior work history, no prior drug offenses, and remorse did not overcome presumption); *People v Piotrowski*, 211 Mich App 527, 532-533; 536 NW2d 293 (1995) (young age, lack of criminal record, and ill-devised crime did not constitute unusual circumstances); *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994) (employment, absence of criminal history, and minimum culpability were not unusual circumstances that overcame the presumption). Indeed, given the gruesome dismemberment of the victim's body, the minimum sentence was entirely proportionate and reasonable; there was no constitutional infringement.[1] Resentencing is unwarranted.

We affirm.


/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Mark T. Boonstra

---

[1] With respect to defendant's assertion that the trial court essentially gave him a life sentence when defendant's age is taken into consideration, our Supreme Court in *People v Lemons*, 454 Mich 234, 258-259; 562 NW2d 447 (1997), observed:

> [W]e find no basis . . . for a requirement that the trial judge tailor every defendant's sentence in relationship to the defendant's age. Persons who are sixty years old are just as capable of committing grievous crimes as persons who are twenty years old. We find no principled reason to require that a judge treat similar offenses that are committed by similarly depraved persons differently solely on the basis of the age of the defendant at sentencing where the Legislature has authorized the judge to impose life or any term of years.