*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRIS BERNARD HANSEN,

Defendant-Appellant.

UNPUBLISHED
February 16, 2023

No. 358505
Mason Circuit Court
LC No. 2020-003724-FH

Before: GLEICHER, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

A jury convicted defendant, Chris Bernard Hansen, of fourth-degree fleeing and eluding police, MCL 257.602a(2), and reckless driving, MCL 257.626, for failing to stop when a sheriff's deputy ordered him to do so. The jury acquitted Hansen of various other charges arising from an earlier incident in a Meijer parking lot, and the court entered a directed verdict on two other driving offenses. Hansen challenges the sufficiency of the evidence supporting his fleeing and eluding charge alone and contends that the court improperly assessed 10 points for offense variable (OV) 19. We affirm.

## I. BACKGROUND

In the predawn hours of June 23, 2020, three men followed Hansen's vehicle into a Meijer parking lot, allegedly to tell Hansen that his headlights were off. These men were driving in a decommissioned police vehicle, specifically a 2009 Impala. They accused Hansen of attempting to hit them with his vehicle. They called 911, accused Hansen of assault, described Hansen's vehicle, and reported that he had driven off at a high rate of speed with his headlights off. After viewing the parking lot security footage, however, the jury acquitted Hansen of all charges arising from that encounter.

Mason County Sheriff's Deputy Adam Claveau heard the report and drove to a location where he could intercept Hansen at a cross street. Deputy Claveau soon observed Hansen drive by at a high rate of speed with his head and tail lights off. The deputy turned onto the road behind Hansen in the left lane and activated the emergency lights and siren on his fully marked sheriff's vehicle. A silver PT Cruiser driving in the right lane immediately pulled over, but Hansen

continued forward. Deputy Claveau testified that Hansen accelerated and decelerated repeatedly, and at one point reached 60 mph in a 30-mph zone. At one point, Hansen's "brake lights illuminate[d]" and his vehicle "slowed down." The deputy believed Hansen would pull over, but instead "the vehicle . . . sped back up."

Mason County Sheriff's Sergeant Kyle Boyd was travelling in the opposite direction when Hansen passed his vehicle. Hansen's headlights were not illuminated and he was speeding and passing other vehicles. Sergeant Boyd turned his vehicle around to assist in pursuing Hansen.

Dashcam footage from Deputy Claveau's vehicle revealed that Hansen drove for eight blocks (more than half a mile) at varying speeds before he finally pulled over. Hansen claimed that he could not hear the sirens because he was sounding his horn, attempting to attract the attention of any law enforcement officers in the area out of fear of the men he encountered in the Meijer parking lot. No automobile horn sounds can be heard in the dashcam recording. Deputy Claveau and Sergeant Boyd testified that they could not hear a horn. Hansen further claimed he did not see the deputy's flashing lights. The recording also reveals the readily observable brightness of the emergency lights along the dark street.

As a result of this chase, the prosecution charged Hansen with fourth-degree fleeing and eluding, and three misdemeanor driving offenses, including reckless driving. The court granted Hansen's motion for a directed verdict on two of the misdemeanors. In denying the motion for a directed verdict on the fleeing-and-eluding charge, the trial court cited evidence that Deputy Claveau's uniform and car were identifiable and that the lights and siren were on. Hansen continued to accelerate, then slowed and accelerated again closer to downtown. The pursuit continued for "a significant stretch of roadway." In all, the trial court found that the evidence was sufficient for a reasonable jury to find Hansen guilty of fourth-degree fleeing and eluding.

At the close of trial, the jury convicted Hansen of fleeing and eluding and misdemeanor reckless driving. The court subsequently sentenced Hansen as a fourth-habitual offender to 14 months to 15 years' imprisonment for the offense of fourth-degree fleeing and eluding and to time served for the misdemeanor.

## II. SUFFICIENCY OF THE EVIDENCE

Hansen contends that the trial court should have granted his motion for directed verdict on the fleeing and eluding charge. MCR 6.419(A) states in relevant part that "[a]fter the prosecutor has rested the prosecution's case-in-chief . . . the court on the defendant's motion must direct a verdict of acquittal on any charged offense *for which the evidence is insufficient to sustain a conviction.*" (Emphasis added.) We review de novo a trial court's decision on a directed verdict motion, *People v Passage*, 277 Mich App 175, 176; 743 NW2d 746 (2007), viewing the evidence "in a light most favorable to the prosecutor to determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt," *People v Couzens*, 480 Mich 240, 244; 747 NW2d 849 (2008). In doing so, we must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The offense of fourth-degree fleeing and eluding is proscribed by MCL 257.602a, which provides in relevant part:

(1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

(2) . . . [A]n individual who violates subsection (1) is guilty of fourth-degree fleeing and eluding, a felony[.][1]

To establish a defendant's guilt of this offense, the prosecution must prove that (1) the officer was in uniform, performing his or her lawful duties, and was driving in an adequately identified law enforcement vehicle, (2) the defendant was driving a motor vehicle, (3) the officer ordered the defendant to stop the vehicle, (4) the defendant "knew of the order," and (5) the defendant "refused to obey the order by trying to fee or avoid being caught." M Crim JI 13.6d.

The prosecution presented sufficient evidence for a rational jury to determine beyond a reasonable doubt that these elements were met. Deputy Claveau was in a fully marked sheriff's vehicle with lights and sirens activated. He was in uniform, on duty, and pursuing a vehicle that had been reported as involved in a crime. There is no dispute that Hansen was driving a vehicle and that Deputy Claveau ordered him to stop by activating the emergency lights and siren.

Hansen's defense was that he did not know of the order because he was activating his horn and did not see the lights and, moreover, he believed the deputy was in pursuit of the PT Cruiser that pulled over. Hansen further contended that he did not refuse to obey, but rather was continuing his flight from his attackers. However, the prosecution presented evidence from which a jury could find to the contrary.

Although Hansen claimed he was activating his horn, the sound of a horn cannot be heard on the dashcam recording and both Deputy Claveau and Sergeant Boyd testified that they heard no horn. The driver of the PT Cruiser saw the lights and heard the siren and immediately pulled over. Hansen continued on for seven more blocks with the deputy in pursuit, belying Hansen's claim that he thought the deputy was trying to pull over the other vehicle. By stating his belief that the deputy intended to pull over someone else, Hansen contradicted his own claim that he had not noticed the pursuing deputy.

Moreover, although Hansen claimed to believe he was being chased by the men from the Meijer parking lot, they were driving a 2009 decommissioned patrol car with light bars and decals

_____

[1] The offense is proscribed by identical language in MCL 750.479a as well.

removed. The deputy pursuing Hansen was in a modern, fully marked vehicle with functioning lights and siren. And Hansen passed Sergeant Boyd's vehicle during his flight. If Hansen was trying to secure police assistance, a jury could rationally conclude that he would have stopped for Deputy Claveau's signal or attracted Sergeant Boyd's attention.

By permitting this charge to go to the jury, the trial court honored the principles that "[i]t is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences," *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010), and that "the prosecutor need not negate every reasonable theory consistent with innocence." *Nowack*, 462 Mich at 400. And ultimately, we may not interfere with jury's findings that are supported by record evidence. Hansen is not entitled to relief.

### III. SCORING OF OV 19

Hansen next argues that the trial court erred in assessing 10 points under OV 19 for interference with administration of justice. As Hansen failed to preserve this challenge, our review is limited to plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763, 764; 597 NW2d 130 (1999). Scoring assessments under the sentencing guidelines must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

MCL 777.49(c) provides for the assessment of 10 points for OV 19 as follows:

[OV] 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services. Score [OV] 19 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

\* \* \*

(c) The offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order………10 points

"OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). See also *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013). Ten points are appropriate when no force is employed in this attempt. *People v Smith*, 488 Mich 193, 201; 793 NW2d 666 (2010).

A preponderance of the evidence supported that Hansen "otherwise interfered with or attempted to interfere with the administration of justice" by fleeing from law enforcement officials to avoid being caught. Hansen ignored Deputy Claveau's lights and siren and fled for more than half a mile. He reached speeds of 60 mph at some points. Hansen finally pulled over eight blocks later. Although Hansen contended that his motive was to flee his alleged aggressors and not the police, the jury disbelieved this defense and the court was free to rely on that evidence to assess 10 points for OV 19. Accordingly, Hansen is not entitled to resentencing.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron